**IT IS ORDERED as set forth below:**

**Date: August 26, 2019**

_____
**Paul Baisier**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | : | CASE NO. **19-54424-PMB** |
| **CONSTANCE GAIL MASON.** | : | |
| | : | CHAPTER 7 |
| Debtor. | : | |
| ------------------------------------------------- | : | |
| **JORDAN E. LUBIN, Chapter 7 Trustee,** | : | |
| Movant, | : | CONTESTED MATTER |
| v. | : | |
| **CONSTANCE GAIL MASON,** | : | |
| Respondent. | : | |
| ------------------------------------------------- | : | |

**ORDER GRANTING TRUSTEE'S MOTION FOR TURNOVER**
**AND SUSTAINING TRUSTEE'S OBJECTION TO DEBTOR'S EXEMPTION**

This matter comes before the Court on the *Trustee's Motion for Turnover and Objection to Debtor's Claim (sic) Exemptions* (Docket No. 12)(the "Motion"), filed on April 22, 2019 by

Jordan E. Lubin, the duly appointed Chapter 7 Trustee (the "Trustee") in this case. The Trustee also filed a *Notice of Hearing* on the same day, scheduling the Motion for a hearing at 2:00 p.m. on May 28, 2019 (the "Hearing")(Docket No. 13). On May 28, 2019, the day of the Hearing, the Debtor filed her *Response to Chapter 7 Trustee's Motion for Turnover and Objection to Debtors (sic) Claim of Exemptions* (the "Response")(Docket No. 23), and the Trustee filed his *Brief in Support of Trustee's Motion for Turnover and Objection to Debtor's Claim (sic) Exemptions* (the "Brief")(Docket No. 24).

The Hearing was held as scheduled. At the Hearing, the Court allowed the Debtor and the Trustee to submit post-hearing briefs. In response, the Debtor filed the *Debtor's Post-Hearing Brief in Opposition to Chapter 7 Trustee's Motion for Turnover and Objection to Debtors (sic) Claim of Exemptions* (the "Debtor's Post-Hearing Brief") on June 11, 2019 (Docket No. 25). The Trustee then filed the *Trustee's Reply to Debtor's Brief in Opposition to Trustee's Motion for Turnover and Objection to Debtor's Claim of Exemptions* (the "Reply Brief") on June 24, 2019 (Docket No. 26).

## BACKGROUND

The material facts of this case are undisputed. On March 20, 2019 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). Prior to the Petition Date, on February 28, 2019, the Debtor quitclaimed her undivided one-half interest in her residence located at 320 Peters Street, SW, Unit 10, Atlanta, Georgia 30313 (the "Residence") to Brittany Morgan Whittemore, the joint owner of the Residence, pursuant to a settlement agreement executed by the Debtor and Ms. Whittemore on

February 25, 2019.[1]  Five (5) days prior to the Petition Date, the Debtor received a $75,000.00 wire transfer from the sale of her interest in the Residence.  The funds were deposited into a savings account at Fidelity Bank, which the Debtor had opened with an initial deposit of $50.00 on February 13, 2019 for the purpose of holding the sale proceeds.

On the Petition Date, the Debtor filed sworn schedules and statements, including Schedule A/B and Schedule C.  *See* Docket No. 1, pp. 10-21.  The Debtor represented in Schedule A/B that she did not "own or have any legal or equitable interest in any residence, building, land, or similar property."  *See* Docket No. 1, p. 10.  The Debtor scheduled financial accounts, including: Fidelity Bank (checking account) - $2,700.00; Wells Fargo (checking account) - $125.00; Fidelity Bank (savings account) - $72,000.00; and Wells Fargo (other financial account) - $25.00 (collectively, the "Accounts").  *See* Docket No. 1, p. 14.  The balances in the Accounts totaled $74,850.00.

On Schedule C, the Debtor claimed exemptions in the Accounts under O.C.G.A. § 44-13-100, as follows:

| Property | Value | Code Section | Exemption Value |
|---|---|---|---|
| Fidelity Bank (savings account) | $72,000.00 | O.C.G.A. § 44-13-100(a)(6) | $11,200.00 |
| Fidelity Bank (savings account) | $72,000.00 | O.C.G.A. § 44-13-100(a)(1) | $11,500.00 |

*See* Docket No. 1 p. 21.

The Trustee filed the Motion on April 22, 2019, arguing that the only exemption available to the Debtor for the Accounts is under O.C.G.A. § 44-13-100(a)(6) and is limited to $11,200.00.

---

[1] Copies of the quitclaim deed and the settlement agreement are attached to the Response as Exhibits A and B, respectively.

The Trustee asserts that the exemption under O.C.G.A. § 44-13-100(a)(1) is not permitted, because the Accounts are not real or personal property that Debtor or a dependent of the Debtor uses as a residence.

In the Motion, the Trustee seeks turnover of $63,650.00 pursuant to 11 U.S.C. § 542, representing the non-exempt value of the Accounts (i.e. $74,850.00 - $11,200.00). The Trustee also moves for denial of the Debtor's claim of exemption under O.C.G.A. § 44-13-100(a)(1) in the Accounts in the amount of $11,500.00. On or about May 6, 2019, the Debtor turned over $52,300.00 to the Trustee, leaving a disputed balance of $11,350.00 (i.e. $63,650.00 - $52,300.00). *See* Response, Exhibit D (Docket No. 23); *see also* Reply to Brief, p. 9.

In the Response, the Debtor asserts that the funds in the Accounts came directly and exclusively from the sale of the Residence, and requests that the Motion be denied. On the same day, the Trustee filed the Brief arguing that the Debtor's exemptions were fixed at the time of filing of the bankruptcy petition, and the Debtor did not own any residence on the Petition Date. Thus, the Trustee contends the Debtor is not entitled to a homestead exemption under O.C.G.A. § 44-13-100(a)(1).

At the Hearing, the Court noted that the Accounts did not appear to be real or personal property that the Debtor or a dependent of Debtor was using as a residence as contemplated by the text of Georgia's homestead exemption. However, the Debtor argued that upon the voluntary sale of her interest in the Residence, the homestead exemption attached to the proceeds of the sale. The Court allowed the Debtor and the Trustee to brief the issue concerning the Debtor's asserted claim of a homestead exemption in the proceeds of the sale of the Residence.

4

In the Post-Hearing Brief, the Debtor acknowledges that there is no Georgia authority addressing this issue under O.C.G.A. § 44-13-100(a)(1). Instead, the Debtor relies on a Florida case that allows a debtor to exempt homestead proceeds "'if, and only if, the vendor shows, by a preponderance of the evidence an abiding good faith intention prior to and at the time of the sale of the homestead to reinvest the proceeds in another homestead within a reasonable time.'" *In re Simms*, 243 B.R. 156, 158 (Bankr. S.D. Fla. 2000), quoting *Orange Brevard Plumbing & Heating v. La Croix*, 137 So.2d 201, 206 (Fla. 1962). The Debtor argues that this Court should apply this holding to this case.

In the Reply Brief, the Trustee again emphasizes that the Debtor's exemptions were fixed at the time of the filing and the Debtor did not own any residence on the Petition Date. In addition, the Trustee contends that it is neither reasonable nor appropriate to consider Florida law because Florida and Georgia have very different exemption schemes and related exemption philosophies. Thus, the Trustee argues that there is no authority under Georgia law to extend the reach of O.C.G.A. § 44-13-100(a)(1) to the proceeds generated by the sale of the Residence.

## ISSUE FOR DECISION

The issue for decision, in short, is whether the Debtor can claim an exemption in the proceeds of the pre-bankruptcy sale of her Residence under O.C.G.A. § 44-13-100(a)(1) where the proceeds have been segregated in a separate account.[2] Upon consideration of all the pleadings

---

[2] Although her counsel stated in pleadings and at the Hearing that the Debtor had an intention to use the proceeds to purchase another residence, the Debtor did not present any evidence (for example, testimony or an affidavit), at the Hearing or in her post-Hearing submissions, that she had such an intention. Further, based on the sworn Schedules filed by the Debtor in this case (*see* Docket No. 1), which show that the Debtor has a -$3,500 monthly cash flow, the Debtor does not appear to be in a position to purchase a new residence at this time or in the near future.

and briefs filed in this matter, and based on the undisputed facts, for the reasons discussed below, this Court holds that O.C.G.A. § 44-13-100(a)(1) does not allow the Debtor to exempt the segregated proceeds created by the pre-petition sale of the Residence.  Therefore, the Trustee's Motion will be granted and the Trustee's objection to the Debtor's claimed exemption in the Accounts under this provision will be sustained.

## LEGAL ANALYSIS[3]

Generally, a debtor may exempt certain property from the bankruptcy estate pursuant to 11 U.S.C. § 522(b) of the Bankruptcy Code.  However, Section 522(b) entitles states to opt out of the federal exemptions in preference of their own exemptions, and Georgia has made such an election.  *See e.g. In re Rogers*, 538 B.R. 158, 171 (Bankr. N.D. Ga. 2015).  As a result, a debtor in Georgia must look to this state's exemption statute, O.C.G.A. § 44-13-100, to determine whether property may be exempted from the bankruptcy estate.  The Georgia homestead exemption is codified in O.C.G.A. § 44-13-100(a)(1).  Section 44-13-100(a)(1) allows a bankruptcy debtor to exempt her home from her bankruptcy estate as follows:

> The debtor's aggregate interest, not to exceed $21,500.00 in value, in real property or personal property **that the debtor or a dependent of the debtor uses as a residence**, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.  In the event title to property used for the exemption provided under this paragraph is in one of two spouses who is a debtor, the amount of the exemption hereunder shall be $43,000.00.

O.C.G.A. § 44-13-100(a)(1)(2019)(emphasis added).

---

[3] The court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding under 28 U.S.C. § 157.   Venue is proper in this district in accordance with 28 U.S.C. §§ 1408 and 1409.  The Trustee bears the burden of proof on his objection.  *See* Federal Rule of Bankruptcy Procedure 4003(c).

1. <u>Exemptions Are Fixed at the Time of Filing</u>

The Debtor's exemptions are determined at the time of filing of the bankruptcy petition. Under bankruptcy law, "the point of time which is to separate the old situation from the new in the bankrupt's affairs is the date when the petition is filed." *White v. Stump*, 266 U.S. 310, 313 (1924). According to the Eleventh Circuit Court of Appeals, "it is settled law that a 'claim of exemption is to be determined as of the petition date.'" *In re Yerian*, 927 F.3d 1223, 1229 (11th Cir. 2019).[4]

On the Petition Date, the Debtor did not own any property that would constitute a homestead under the exemption statute. The Debtor had already converted her ownership interest in the Residence to cash. The proceeds of the sale – the Accounts totaling $74,850.00 – are not "real or personal property that the Debtor or a dependent of the Debtor was using as a residence."

2. <u>The Statutory Language of O.C.G.A. § 44-13-100(a) Does Not Mention "Proceeds"</u>

As set forth above, a debtor in Georgia must look to this state's exemption statute, O.C.G.A. § 44-13-100, to determine whether property may be exempted from the bankruptcy estate. When tasked with construing a statutory provision, a court's inquiry begins with the statutory text, as "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). If, however, the text of the statute is ambiguous, a court may turn to "other interpretive tools." *United States*

---

[4] The Ninth Circuit agrees: "[a] debtor's exemptions, have long been fixed at 'the date of the filing of the bankruptcy petition.'" *Wilson v. Rigby*, 909 F.3d 306, 308 (9th Cir. 2018), quoting *White*, *supra*, 266 U.S. at 313. The Fifth Circuit, the Sixth Circuit, and the Tenth Circuit have similar holdings. *See Hawk v. Engelhart*, 871 F.3d 287, 291 (5th Cir. 2017)("moreover, the date of filing is the point at which 'the status and rights of the bankrupt, the creditors and the trustee…are fixed.'")(citation omitted); *Holley v. Corcoran*, 661 Fed. Appx. 391, 395 (6th Cir. 2016)("we acknowledge that a debtor may claim only those exemptions available at the time of the bankruptcy petition filing")(citations omitted); *Rutledge v. Johansen*, 270 F.2d 881, 882 (10th Cir. 1959)("it is true that exemption rights are determinable as of the date of the filing in bankruptcy")(citing *White, supra*).

*v. Pringle*, 350 F.3d 1172, 1180 n.11 (11th Cir. 2003). Here, the language of O.C.G.A. § 44-13-100(a)(1) is plain and unambiguous. Nowhere is the term "proceeds" mentioned in Section 44-13-100(a)(1). The statutory text says "residence," not "residence or proceeds thereof," and the reference to personal property is specifically restricted to its use as a residence.

Notably, the entirety of Section 44-13-100(a)(1) uses the present tense; the first sentence says: "[t]he debtor's aggregate interest, not to exceed $21,500.00 in value, in real property or personal property that the debtor or a dependent of the debtor *uses* as a residence…" (emphasis added). This is consistent with the well-established rule that exemptions are determined at the time of filing. The question is whether a debtor has an interest in a residence on the petition date; not whether debtor used to have such an interest, or may have such an interest in the future. Here, on the Petition Date, the Debtor's schedules reflect that she did not own any interest in either real or personal property that either she or a dependent was using as a residence. Under the plain language of Section 44-13-100(a)(1), the exemption was extinguished upon the Debtor's voluntary sale of her homestead, the Residence. Accordingly, the Debtor may not exempt proceeds from the sale of the Residence.

Further, it is not appropriate to interpret Section 44-13-100 liberally to extend Georgia's homestead exemption to homestead proceeds. Admittedly, as discussed below, some states that have opted out of the federal exemptions courts have taken a more liberal view in favor of debtors in construing their exemption laws. *See e.g. Simms, supra*, 243 B.R. at 158 (noting Florida courts committed to a liberal reading of homestead exemption under Florida law). Georgia has not taken that view regarding its exemptions.

Instead, courts in Georgia adhere to a more balanced consideration of the plain language of Section 44-13-100(a)(1) and its bankruptcy specific exemptions. For example, in *In re Page* 289 B.R. 484 (Bankr. S.D. Ga. 2003), the debtor sold a lot and a mobile home pre-petition, moved away from the property, and took a deed to secure debt to secure the outstanding purchase price that the buyer would pay in installments. The *Page* court held that the debtor had failed to meet an essential element of the homestead exemption because the debtor did not reside at the property, and because her security interest in the property was "not of a type from which residence flows" since the purpose of the exemption is to protect a debtor's interest in having shelter. *Id.* at 485.

In *In re Holt*, 357 B.R. 917, 920 (Bankr. M.D. Ga. 2006), another case construing Section 44-13-100(a)(1), the debtors argued for an extension of Section 44-13-100(a)(1) to exempt not only their residence, but also a block house situated on real property contiguous to the debtors' residence that they rented to tenants. The court in *Holt* held that "there is simply no authority under Georgia law to extend the reach of O.C.G.A. § 44-13-100(a)(1) to *rental* property belonging to debtors where that property is contiguous to debtors' residence," thus sustaining trustee's objection to the debtors' attempt to claim a Georgia homestead exemption in the block house and its real property. *Id.* at 924. Since the property at issue was not used as debtors' residence, it could not be exempted.

In sum, under the plain language of O.C.G.A. § 44-13-100(a), as that language has been interpreted by courts in Georgia in similar circumstances, the Debtor may not exempt the proceeds from the sale of the Residence.

9

3.     Florida Homestead Exemption Law Does Not Have Precedential Value in Georgia

In the Debtor's Post-Hearing Brief, the Debtor cites a Florida case, *Simms*, *supra*, for the proposition that the funds from the sale of the Residence that she was holding in a segregated bank account on the Petition Date should be exempt under O.C.G.A. § 44-13-100(a)(1).  In *Simms*, the debtors sold their residence a year prior to filing Chapter 7 bankruptcy and used the proceeds from the sale to purchase an annuity.  *Simms*, *supra*, 243 B.R. at 157.  They later filed for bankruptcy, and the trustee objected to the debtors' claimed exemptions in the annuity as well as another property where they had relocated, arguing as to the annuity that it had been purchased through "conversion of a non-exempt asset" (i.e. the sale proceeds) to defeat creditors.  *Id.* at 157-58.  The debtors in that case asserted that under Florida law "[t]he voluntary liquidation of an exempt asset and subsequent reinvestment in another exempt asset should be considered permissible per se because such a maneuver neither harms creditors nor changes their position vis-a-vis the debtor." *Simms*, *supra*, 243 B.R. at 159.

The court in *Simms* found that the annuity did not constitute an exempt asset under the homestead provision because the debtors did not establish their intention to reinvest the sale proceeds derived from sale of their homestead into *another* homestead.  *Id.*   In other words, under Florida law, a claim of exemption in homestead proceeds can be upheld *if* the debtor shows that a good faith intention existed when the homestead was sold to *roll over* those proceeds into a *new* homestead, as distinguished from purchasing another exempt asset, within a reasonable period. *Id.* at 158-59.[5]

---

[5] The bankruptcy court observed that in *Orange Brevard Plumbing*, *supra*, 137 So. 2d 204-06, the Florida Supreme Court had "rejected the majority rule" in the case law that homestead sale proceeds are not exempt, opting instead to

The Debtor's reliance on Florida law in this case is misplaced. Florida's homestead exemption statute is far more generous than Georgia's. Florida homestead exemption laws protect the equity in a debtor's residence in an unlimited amount. *See* Fla. Stat. Ann. Const. Art. 10, § 4.[6] By contrast, most states, including Georgia, offer substantially less generous exemptions. *See e.g.* O.C.G.A. § 44-13-100 (setting a cap of $21,500.00 for one person; $43,000.00 for two people). Moreover, Florida courts generally liberally interpret the Florida homestead exemption. *Simms*, 243 B.R. at 158, citing *Orange Brevard Plumbing, supra*, 137 So. 2d at 204-06. Given the significant differences in Florida's exemption statute as compared to the Georgia exemption statute, case law interpreting the reach of the Florida exemption law is not persuasive here.[7]

---

follow a more expansive interpretation of Florida's homestead law. *Simms, supra*, 243 B.R. at 158, 160. The exemption is, however, conditioned on the intent to reinvest the proceeds generated by sale of a homestead into another homestead, which was lacking in that case. The bankruptcy court nevertheless overruled the trustee's objection since the annuity was otherwise exemptible and its purchase through the sale proceeds was not fraudulent. The bankruptcy court also overruled the trustee's objection in the debtors' exemption in their other real property, because they showed their intent to make that property their residence when they sold the first homestead. 243 B.R. at 159-60.

[6] The Florida Constitution provides, in pertinent part, as follows:

> (a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
>
> > (1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or the owner's family….

Fla. Stat. Ann. Const. Art. 10, § 4 (Homestead; exemptions).

[7] The Debtor would not have been able to exempt the funds here even under Florida law, since it is the debtor's "intention" to use the sale proceeds to purchase a new home that is key there. *Orange Brevard Plumbing, supra,* 137 So. 2d at 206. As noted *supra*, fn. 2, that intention was not proven here.

4. <u>Decisions from Other States Do Not Support Extension to Proceeds</u>

Although the Debtor provided the Court only a single Florida case (*Simms*) in support of its assertion that proceeds of a homestead can qualify for a homestead exemption even where the statutory language does not mention proceeds,[8] this issue has been addressed by a variety of courts in states other than Florida over the years.  Reviewing the authorities from those other jurisdictions, there appears to be a split of authority on the issue of extending a homestead exemption to proceeds in those circumstances.[9]

In the absence of an express statutory provision addressing proceeds, the voluntary sale of a homestead has been held to be a complete extinguishment of the right to a homestead exemption in numerous states.  For example, Connecticut courts have found that the proceeds of a voluntary

---

[8] In several states, the exemption statutes plainly and unambiguously provide that a debtor has a right to claim an exemption in the proceeds of a voluntary conveyance, subject to certain restrictions.  For example, Section 33-1101 of the Arizona Revised Statute provides in pertinent part as follows:

> [t]he homestead exemption, not exceeding the value provided for in subsection A, automatically attaches to the person's interest in identifiable cash proceeds from the voluntary or involuntary sale of the property.  The homestead exemption in identifiable cash proceeds continues for eighteen months after the date of the sale of the property or until the person establishes a new homestead with the proceeds, whichever period is shorter.  Only one homestead exemption at a time may be held by a person under this section.

Ariz. Rev. Stat. Ann. § 33-1101.  California, Colorado, Idaho, Maine, and Texas have similar statutory language. *See* Cal. Code Civ. Proc. § 704.720 (proceeds are exempt for six months); Colo. Rev. Stat. § 38-41-207 (proceeds are exempt for a period of two years if they are kept separate and identifiable); Idaho Code § 55-1008 (proceeds are exempt only if they are reinvested in another homestead within 1 year); 14 Me. Stat. tit. 14 § 4422 (proceeds are exempt only if they are reinvested in another homestead within six months); and Tex. Prop. Code Ann. § 41.001(c) (2001)(proceeds are exempt from seizure by creditors for six months).  In states like Arizona, because the language of the statutes is plain and unambiguous, there is no dispute regarding whether a debtor has the right to claim an exemption in sales proceeds.  Georgia does not have such statutory language, requiring a different analysis here and making review of cases from jurisdictions that have such language unhelpful.  Further, at least one court has inferred from the long-term existence of these types of statutes in numerous states that the failure of a state's legislature (like Georgia's) to enact such a provision should be taken as an indication they would not support the extension of a homestead exemption to proceeds.  *In re Blair*, 125 B.R. 303, 305 (Bankr. D. N.M. 1991).

[9] *See generally* 40 AM. JUR. 2d *Homestead* § 40 ("When proceeds of voluntary sale of homestead are exempt")(2019).

transfer of a homestead are not exempt in bankruptcy proceedings. *See e.g. In re Kujan*, 286 B.R. 216, 223-24 (Bankr. D. Conn. 2002). In New Hampshire, "there is no statutory protection of the homestead right upon the voluntary sale of the homestead." *In re Schalebaum*, 273 B.R. 1, 2 (Bankr. D. N.H. 2001). In New York, when a debtor voluntarily sells homestead property before filing for bankruptcy, the debtor cannot exempt the sales proceeds. *See In re Murdock*, 2008 Bankr. LEXIS 808, *8 - *9, 2008 WL 728879 (Bankr. N.D. N.Y. Mar. 17, 2008).[10]

A case from Ohio, *In re Meeks*, 2006 WL 4458354 (Bankr. N.D. Ohio July 10, 2006), presents facts fairly similar to those in this case. In *Meeks*, like here, the Debtor sold her one-half interest in her residence shortly before she filed her Chapter 7 case. *Meeks, supra,* at 1. The applicable Ohio statute provided that, to qualify for the homestead exemption, the property had to be one "'that the person or a dependent of the person **uses** as a residence.'" *Id.* at 3, quoting Ohio Rev. Code Ann. § 2329.66(A)(1)(b)(emphasis added). So, like O.C.G.A. § 44-13-100(a)(1), the Ohio statute uses the present tense to describe the relevant interest. Like this Court, the Ohio court found that this language meant that an express interest in proceeds was excluded by the statutory language. *Id*. After noting the split in nationwide case law on an implied exemption in proceeds, the court in *Meeks* concluded by observing that, even in states that find an implied exemption in proceeds, the debtor is required to prove an "abiding good faith intention at the time of the sale to reinvest the proceeds in another homestead within a reasonable time." *Meeks, supra,* at 5. Because the debtor in *Meeks* had not proven such an abiding intention, and in fact had

---

[10] *See also In re Blair*, *supra*, fn. 9)(no exemption in proceeds under New Mexico law in the absence of a statutory provision); *Obenshain v. Obenshain*, 252 Ark. 701, 480 S.W. 2d 567 (1972)(same under Arkansas law).

already acquired a new residence, the *Meeks* court held that, even if Ohio would recognize an implied exemption in proceeds, Meeks would not qualify for it.

Several other states have case law, much of it from the early 20th century, that supports the opposite view - that sales proceeds of a homestead are exempt where the applicable statute is silent on the issue. *See Meeks*, *supra*, 2006 WL at 3 (collecting cases from Florida, Iowa, Kentucky, Oklahoma, and Wisconsin). The Florida authority is not persuasive for the reasons already discussed. *See* pp. 10 – 11, *supra*. The Iowa authority (*Millsap v. Faulkes*, 236 Iowa 848, 20 N.W.2d 40 (Iowa 1945)), is based on a separate Iowa statutory provision that provides:

> "Where * * * a new homestead has been acquired with the proceeds of the old, the new homestead, to the extent in value of the old, is exempt from execution in all cases where the old or former one would have been."

*Millsap*, at 41 (quoting Iowa Code § 10154 (1939)). It is also based on a liberal interpretation philosophy as regards the homestead exemption, *Millsap*, at 42, that is not part of Georgia law. *See supra*, at pp. 8 - 9.[11] The Kentucky case (*Marcum v. Edwards*, 181 Ky. 683, 205 S.W. 798 (Ct. App. Ky. 1918)), is similarly based on a general, liberal interpretation of its homestead statutes. *Marcum*, at 799-800. In the Oklahoma case (*Field v. Goat*, 70 Okla. 113, 173 P. 364 (Okla. 1918)), the court noted that, even in 1918:

> In perhaps the greater number of jurisdictions the rule is that in the absence of a statute expressly extending such exemption to the proceeds of the voluntary sale of the homestead such proceeds are not exempt from seizure by legal process at the suit of a creditor whether they be intended for reinvestment in another homestead or not

*Field*, at 364. The *Field* court goes on to cite to the liberal construction of its homestead exemption, and based on that finds that proceeds are exempt in Oklahoma so long as there is an

---

[11] It appears that this case law exemption may have been codified in 1950. *See Blair*, *supra*, 125 B.R. at 305.

intention to reinvest the proceeds in a new homestead within a reasonable time.  *Field*, *supra*, at 364-365.

Based on a review of the controlling Georgia statutory provision and the cases interpreting it, the Debtor in this case cannot claim a valid exemption in the Accounts under O.C.G.A. § 44-13-100(a)(1).  Cases from other states that would support an implied exemption do not generally provide helpful assistance in interpreting the relevant Georgia statutory provision, for the reasons set forth above.  Only *Meeks*, *supra*, with its similar statutory language, is a close parallel, and it supports denial of the exemption asserted here.  As a result, it is hereby

**ORDERED** that the Trustee's Motion for Turnover is **GRANTED;** and, it is further

**ORDERED** that the Debtor's claim of exemption in the Accounts under O.C.G.A. § 44-13-100(a)(1) is **DENIED**; and, it is further

**ORDERED** that the Debtor shall **turn over** to the Trustee promptly the amount of $11,350.00.

The Clerk is directed to serve a copy of this Order upon the Debtor, counsel for the Debtor, the Chapter 7 Trustee, and the United States Trustee.

**[END OF DOCUMENT]**